NEW YORK CENTRAL RAILROAD COMPANY *v.* EDWARD H. JOHNSON.

SAME *v.* MYRTLE J. JOHNSON.

Nos. 455 and 456. Argued March 8, 1929.—Decided April 8, 1929.

Messrs. *Sidney C. Murray* and *Albert S. Marley*, with whom *Mr. Marvin A. Jersild* was on the brief, for petitioner.

*Mr. Price Wickersham*, with whom *Messrs. John H. Atwood, Oscar S. Hill*, and *Clarence C. Chilcott* were on the brief, for respondents.

MR. JUSTICE STONE delivered the opinion of the Court.

Respondent in No. 456 brought suit in the Circuit Court of Jackson County, Missouri, to recover for personal injuries alleged to have been caused by the negligent operation of one of petitioner's trains. The suit in No. 455 was brought in the same court by the husband of respondent in No. 456, to recover for the loss of her services. Both cases were removed to the District Court for Western Missouri, where they were tried together. Judgment there on a verdict for respondents was affirmed by the Court of Appeals for the Eighth Circuit. 27 F. (2d) 699. This Court granted certiorari October 15, 1928, 278 U. S. 590, the order allowing the writ directing

that the argument in this Court " be limited to the question whether the alleged misconduct of counsel for the plaintiffs in their arguments to the jury was so unfairly prejudicial to the defendant as to justify a new trial."

At the trial, there was evidence that respondent, while a passenger on petitioner's train, was thrown to the floor by a sudden and unusual motion of the train, receiving a blow on her head which caused paralysis of one side of the body, impaired locomotion and other physical disabilities. All material allegations of the complaint were denied, including those specially setting up the cause and nature of respondent's injuries. In the course of the cross-examination of respondents' witnesses, petitioner's counsel elicited the fact that, following the accident, one of respondent's physicians had administered a treatment usually given for syphilis. He asked other questions tending to show, had favorable answers been received, that she had exhibited symptoms recognized to be those of this disease; that the Wasserman test for syphilis, which had been applied to her by her physician with negative results, was not necessarily conclusive as to its non-existence; that other more reliable tests had not been applied; that the disease might cause the paralysis complained of and the treatment for it produce the other symptoms exhibited by respondent.

The opening statement for petitioner to the jury had contained no suggestion that the alleged condition of respondent was due to syphilis. No evidence to that effect was offered in its behalf, counsel contenting himself with calling witnesses to disprove only the negligence and the occurrence of the accident. In the closing argument petitioner's counsel denied any belief that respondent was afflicted with the disease and disclaimed any purpose to show that her present condition was due to it. He then for the first time suggested, although there was no

evidence to support it, that her condition was caused by the administration, by one of her physicians, of a specific for syphilis in consequence of a mistaken diagnosis.

Two counsel for respondents participated in the closing argument. The first, who preceded counsel for petitioner, made the following statements to the jury, to which, at several points, objection was made, overruled and an exception noted:

" But, gentlemen, the vilest defense made in this case, a defense which would bar that girl from all society, intimated in this case that she had the syphilis. That is the defense in this case, that she had syphilis.

. . . . . .

" Gentlemen of the jury, they would charge her with a disease which would brand her as bad as a leper and exclude her from the society of decent people. That is the kind of a defense that is in this case, and I resent it. I resent the New York Central coming into this town and saying that that girl has the syphilis and trying to make this jury believe that she has the syphilis.

. . . . . .

" She will be a misery to herself; every time she attempts to take a step and is unable to do so, she suffers mental anguish; every time she sees people watching her, and knowning what she is doing, she suffers mental anguish. And gentlemen, it is sought to say that that is the result of syphilis. Syphilis, one of the most—the worst disease that is known in human history, a disease that can never be freed from the body; a disease that is worse than leprosy. That is the defense in this case. And, gentlemen, with not one, not one scintilla of evidence in this case to justify it."

The second counsel for respondents, whose argument followed that of petitioner's counsel and his disclaimer

already mentioned, was permitted, over objection and exception, to say to the jury:

"You mean to tell me he [petitioner's counsel] didn't talk to those doctors about it? . . . That he wasn't aware of that, and he wasn't trying to put the stigma of indecency upon this young woman in his defense? You mean to say that he wasn't aware of that situation?

"Oh, I have been too long in this business of trying law suits not to know that. So I immediately came to the front and exposed him, and proved it to the hilt; so much so that they stopped . . . Never again will you ever dare to put that letter of syphilis upon the brow of a decent woman—"

The Circuit Court of Appeals, in affirming the judgment for respondent, said, p. 702:

"Both counsel for the plaintiff who addressed the jury stated that . . .

"'The vilest defense made in this case, a defense which would bar that girl from all society, intimated in this case that she had the syphilis. That is the defense in this case, that she had the syphilis.' And then proceeded to dilate on and exploit this text. We find no justification for this assumption, or for the verbal pyrotechnics that counsel were permitted to indulge in over the objections of the attorneys for the defendant. The defense put no witnesses on the stand to controvert the plaintiff's evidence that the plaintiff did not have syphilis. The only evidence counsel for the plaintiff cites as justifying their argument was the cross-examination of some of plaintiff's witnesses; but an affirmative defense of this character can not ordinarily be proved by cross-examination. Moreover, defendant's interrogatories along this line were no more than a continuation of similar questions propounded on the direct examination. We therefore deem it proper to

observe that this line of argument was likely to create prejudice, and did not aid the court or jury in the performance of their duties."

Petitioner argues, as the court below stated, that there was no defense in the case that respondent's condition was due to syphilis, that the quoted remarks of counsel were without foundation in the record and that they were so prejudicial as to deprive petitioner of a fair trial.

From what has been said, it is apparent, as respondents assert, that in a strict sense the court of appeals did not, by the remarks quoted, correctly interpret the record or characterize with accuracy the issue which had been raised under the pleadings by the evidence. The burden was on respondents to prove that the physical condition complained of was caused by injuries received on petitioner's train. It was open to petitioner, if so advised, to seek in good faith to show that respondent's condition was not due to the accident, but was attributable to disease as an independent cause. This was a matter of defense which, under petitioner's general denial, might have been established either by the cross-examination of respondents' witnesses or by the testimony of its own.

Examination of the record discloses that counsel for petitioner took the initiative in attempting to develop, by cross-examination of respondents' witnesses, evidence whose only apparent purpose was to support this defense, and this course was continued by him through a considerable portion of the trial. He first directed the inquiry to the symptoms of respondent which, if they existed, would have indicated that she was suffering from the disease. He first brought out that she had been subjected by her own physicians to the Wasserman test. But whatever motive inspired this course of conduct, it was evident that this line of defense came to nothing. The cross-examina-

tion developed little of moment and no witnesses were called by petitioner to support it. At the close of the case it was apparent that the attempted or suggested defense that respondent's condition was due to syphilis was without substance, and it was formally abandoned by petitioner's counsel in his address to the jury.

In this condition of the record, the repeated statements of counsel that syphilis was the defense, coupled with the vituperative language which we have quoted and the statements that the petitioner had charged respondent with indecency, made in the face of testimony of respondents' own witness that the disease was frequently transmitted by the use of drinking cups or other innocent means, was not fair comment on the evidence or justified by the record. Cf. *Cherry Creek Nat. Bank* v. *Fidelity & Casualty Co.*, 207 App. Div. (N. Y.) 787; *Grabowsky* v. *Baumgart*, 128 Mich. 267, 272; *Fisher* v. *Weinholzer*, 91 Minn. 22, 25; *Strudgeon* v. *Village of Sand Beach*, 107 Mich. 496, 504. Their obvious purpose and effect were improperly to influence the verdict by their appeal to passion and prejudice.

However ill advised, counsel for petitioner was within his rights in following this line of inquiry, and even if it be assumed that the situation was one calling for comment on the evidence so elicited, neither petitioner nor its counsel was on trial for pursuing it. Want of good judgment or good taste, or even misconduct on the part of either, was not an issue in the case for the jury, nor could it excuse like conduct on the part of respondents' counsel. See *Tucker* v. *Henniker*, 41 N. H. 317, 322; *Mittleman* v. *Bartikowsky*, 283 Pa. 485, 488; *Mitchum* v. *Georgia*, 11 Ga. 615, 629; *Welch* v. *Union Central Life Ins. Co.*, 117 Iowa 394, 404. An exhibition of any or all of these faults was not ground for a verdict in respondents' favor or for enhancing it.

Such a bitter and passionate attack on petitioner's conduct of the case, under circumstances tending to stir the resentment and arouse the prejudice of the jury, should have been promptly suppressed. See *Masterson* v. *Chicago & N. W. Ry. Co.*, 102 Wis. 571, 574; *Gulf, Colorado & S. F. Ry. Co.* v. *Butcher*, 83 Tex. 309, 316; *Tucker* v. *Henniker, supra,* at 322; *Monroe* v. *Chicago & Alton R. R. Co.*, 297 Mo. 633, 644. The failure of the trial judge to sustain petitioner's objection or otherwise to make certain that the jury would disregard the appeal, could only have left them with the impression that they might properly be influenced by it in rendering their verdict, and thus its prejudicial effect was enhanced. See *Hall* v. *United States*, 150 U. S. 76, 81; *Graves* v. *United States*, 150 U .S. 118, 121; *Wilson* v. *United States*, 149 U. S. 60, 68. That the quoted remarks of respondents' counsel so plainly tended to excite prejudice as to be ground for reversal, is, we think, not open to argument. The judgments must be reversed with instructions to grant a new trial.

Respondents urge that the objections were not sufficiently specific to justify a reversal. But a trial in court is never, as respondents in their brief argue this one was, "purely a private controversy . . . of no importance to the public." The state, whose interest it is the duty of court and counsel alike to uphold, is concerned that every litigation be fairly and impartially conducted and that verdicts of juries be rendered only on the issues made by the pleadings and the evidence. The public interest requires that the court of its own motion, as is its power and duty, protect suitors in their right to a verdict uninfluenced by the appeals of counsel to passion or prejudice. See *Union Pac. Ry. Co.* v. *Field,* 137 Fed. 14, 15; *Brown* v. *Swineford,* 44 Wis. 282, 293. Where such paramount considerations are involved, the failure of counsel to particularize an exception will not preclude this Court from

correcting the error. *Brasfield* v. *United States,* 272 U. S. 448, 450.

As there must be a new trial, attention should be directed to other objectionable conduct by respondents' counsel in the course of the trial; their repeated assertion, without supporting evidence, that the defense was a " claim agent defense"; references to petitioner as an " eastern railroad"; and statements that the railroad had " come into this town" and that witnesses and records had been " sent on from New York" for the trial of the cause. Such remarks of counsel, and others of similar character, all tending to create an atmosphere of hostility toward petitioner as a railroad corporation located in another section of the country, have been so often condemned as an appeal to sectional or local prejudice as to require no comment. See *Cherry Creek Nat. Bk.* v. *Fidelity & Casualty Co., supra; Dolph.* v. *Lake Shore etc. Ry. Co.,* 149 Mich. 278, 280; *Southern Ry. Co.* v. *Simmons,* 105 Va. 651, 665.

These writs of certiorari were granted on a petition signed by counsel for petitioner who did not participate in the trial. It stated that the cases were of importance and were such a departure " from the accepted and usual course of judicial proceedings, as to call for an exercise of this Court's power of supervision." But his argument here was so inadequately prepared and exhibited such lack of familiarity with the record as not to be of assistance to the Court, and in the argument of counsel on both sides, who had participated in the trial below, there was a want of that candor which is essential to the proper and adequate presentation of a cause in this Court. The occasion seems appropriate to remind counsel that the attempted presentation of cases without adequate preparation and with want of fairness and candor discredits the bar and obstructs the administration of justice.

*Reversed.*